IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 18, 2012

**JUAN D. HALL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 97729     Bob R. McGee, Judge**

_____

**No. E2012-01131-CCA-R3-PC - Filed March 25, 2013**

_____

The Petitioner, Juan D. Hall, appeals the Knox County Criminal Court's denial of his petition for post-conviction relief from his convictions of possession with intent to sell cocaine, possession of a firearm during the commission of a dangerous felony, and coercion of a witness, for which he received an effective sentence of thirteen years. In this appeal, the Petitioner contends that the post-conviction court erred in determining that his guilty pleas were not knowingly and voluntarily made. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

J. Liddell Kirk, Knoxville, Tennessee for the Petitioner-Appellant, Juan D. Hall.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Senior Counsel, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Jennifer Welch, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner entered guilty pleas to possession with intent to sell more than twenty-six grams of cocaine, a Class B felony, and possession of a firearm during the commission of a dangerous felony and coercion of a witness, Class D felonies. As part of the plea agreement, the remaining thirteen counts of the information were dismissed, as well as three other cases, and the State agreed "there will not be a federal referral on Mr. Hall on the gun case." The Petitioner stipulated to the facts recited by the State at the plea submission hearing:

If called to trial in this case, the State would call the witnesses listed on the indictment. Officer Phil Jinks from the Knoxville Police Department Repeat Offender Unit would testify that he did a search warrant on the home where Juan Hall was staying on July 31st, 2008.

When they went in, among all of the different things that were found in the house, there were multiple firearms, there was about 38 grams of crack cocaine among other drugs, there were 11 children in the house. It was a very chaotic scene when they entered the residence.

After they did the search and got everything back to the police department, at that time Officer Jinks interviewed Juan Hall who did admit that he would have fingerprints or DNA very likely on at least one of the guns, that he had picked it up and carried it around.

There was proof throughout the house that the drugs were for resale, both between the scales and the weight. All of the large amount of drugs were packaged. There had been buys at the residence where Mr. Hall was seen participating in at least one of the buys.

And there would be proof from Alicia Piety, the person that was also charged in this case, that she and Mr. Hall were both selling drugs out of the residence. There would be further proof that all of these events did occur in Knox County. And that Mr. Hall did, in fact, have these prior felony convictions, which increase his sentence on the gun charge.

And a witness from the TBI would testify that these drugs did, in fact, come back positive for crack cocaine.

As to the coercion of a witness offense, the Petitioner stipulated to the following facts recited by the State:

If called to trial in this case we would call the witness listed on the information. Ms. Piety would come in and testify that she received a phone call from the Knox County Penal Farm on Friday and it was Mr. Hall, and he asked her if she was really going to come to testify. And when she said she had received a subpoena, he told her she needed to lie in this case for trial today in 94465.

There's also proof from a jailer at the Knox County Jail who would testify that Mr. Hall was out working in the pod, that Mr. Hall asked to use the pod desk telephone, which is an unrecorded line, that he agreed because Mr. Hall had been working hard that day, that he let him–that Mr. Hall told him he needed to call his wife, and made some comment about getting bond money. So he thought it was a routine call. The officer dialed Ms. Piety's number, because the inmate could not dial it himself. So the officer would testify that the call was in fact placed to Alicia Piety. There would be further proof that all these events occurred in Knox County.

The Petitioner testified that he had reviewed the petition to plead guilty with his attorney, that he understood the petition, that he understood each of the constitutional rights he was waiving by pleading guilty, that he was satisfied with his counsel's representation, that he did not have any questions for the court, and that he was entering his plea freely, voluntarily, and knowingly and because he was in fact guilty. For the possession of a firearm during the commission of a dangerous felony and the coercion of a witness, the Petitioner was sentenced to concurrent terms of five and two years, respectively. For the possession with intent to sell offense, the Petitioner received a consecutive eight-year sentence, for a total effective sentence of thirteen years.

The Petitioner timely filed a pro se petition for post-conviction relief and was appointed counsel who filed an amended petition.

At the evidentiary hearing, the Petitioner testified that counsel met with him "a few times" and discussed his charges and gave him copies of the State's discovery. Counsel discussed with him the fact that police recovered thirty-three rocks of crack cocaine in a purse inside the master bedroom where the Petitioner was found. He also discussed the discovery of a bag containing approximately 29 grams of marijuana found by the police during the search. The Petitioner complained that he had been charged with possession of these drugs when they weren't "on [him]." He denied discussing other evidence found in the residence or the significance of such evidence for proving intent to resell controlled substances. He admitted counsel explained the significance of the statement the Petitioner made to the police in which he denied knowledge of drug dealing in the residence but admitting knowledge of a gun in the house. He said he pled guilty because he "was concerned about all this time [counsel] was telling me I was going to get. And if I was found guilty [the district attorney] was gonna stack all these charges." He was also concerned about possible federal charges. He complained that counsel told him he should enter a guilty plea or he "would never see the streets again."

The Petitioner testified that counsel did not "go over" the plea agreement with him and he "didn't understand what [he] was signing." He said he "didn't know that [he] was pleading guilty to possession of 26 grams that was found in the purse, not on me." He admitted he understood he was entering a plea of guilty to a felony drug charge, but he thought he would get "eight years probation" for that offense. He recalled the State's reciting the facts at the plea colloquy but said "no one never told me that I was pleading to possession of 26 grams, or I would have never pled to that. Why would I plead to something that was not on me?" He said he thought he was pleading guilty to what his wife, Alicia Piety, sold the night the police searched the residence. He admitted knowing she made a statement to police confessing she had been selling drugs from that residence. He denied discussing constructive possession with counsel. He said counsel told him he "was just as guilty because [he] knew what Alicia Piety was doing," and after the plea he learned that the State would have had to prove knowledge, and he did not think the State could prove that he knew about the drugs. He understood the weapons charge and its sentence.

On cross-examination, the Petitioner eventually admitted that at the plea hearing, he heard the State announce that it had found 38 grams of crack cocaine and other drugs in his residence and that the State did not talk about Alicia Piety's drug sales. He admitted he had eighteen previous convictions in Knox County alone and that he entered a guilty plea for each. He admitted having convictions for possessing drugs for resale. He admitted he had rejected an earlier plea in this case and had planned to go to trial the Friday before the Monday trial. He admitted counsel answered a "few" questions about the discovery material and that he read a "very detailed" police report.

Counsel testified that he met with the Petitioner "at least 12 to 15 times" on this case and explained the discovery materials to him. Counsel said meeting with the Petitioner was like "the movie Groundhog Day . . . it would be a restart, and we would go through everything every time." Counsel testified he explained the drug charge to the Petitioner "in detail" each time he met with him because counsel "wanted to make sure [the Petitioner] knew what he was doing." Counsel said the Petitioner asked him how he could have a felony drug charge "[d]espite the fact that [counsel] explained constructive possession and actual possession and all the other issues that are prevalent in this case." Counsel said he "went through every count . . . and then explained sentencing options . . . . So he was aware of what he was facing, what he was charged with, and what the potential exposure was to going to trial." Counsel said he was prepared to go to trial but that after he told the Petitioner that the State knew he had coerced Alicia Piety, the Petitioner "instructed [him] to see if there was any way that [he] could come up with an agreement." Counsel pursued a plea agreement even though the State's deadline for entering plea agreements had passed. On cross-examination, counsel said the original plea agreement was for ten years, five on the drug charge and five on the weapons charge. He testified that the day before the Petitioner entered

-4-

his guilty pleas, counsel met with him in jail "for three hours and went over everything with him once again to make sure there [was] no confusion." He said he does not make recommendations to his clients but instead explains all the risks to them.

The defense recalled the Petitioner, who testified that on the morning of the guilty plea, he asked counsel if he could fire him, and counsel replied that the court would not allow that then, as it had denied the Petitioner's prior request to fire counsel.

The post-conviction court denied relief and determined that the Petitioner had failed to present any evidence that counsel was deficient by failing to advise the Petitioner of the circumstances of entering the guilty plea. It further determined that the Petitioner failed to demonstrate prejudice as a result. The Petitioner then filed a timely notice of appeal.

## ANALYSIS

**I. Ineffective Assistance of Counsel.** The extent of the issue presented in the Petitioner's brief is whether "[t]he trial court erred in denying post-conviction relief." Based on the authority cited, the Petitioner apparently argues that counsel was ineffective in failing to properly advise him of the law concerning actual and constructive possession of drugs or guns. Instead, the Petitioner believed he was pleading guilty to "some kind of accomplice liability" for the offenses committed by his co-defendant, wife. Consequently, the Petitioner argues that his guilty pleas were unknowing and involuntarily entered because he "materially misunderstood the nature of the plea agreement" and the sentence imposed. The State responds that "the record supports the post-conviction court's determination that both counsel and the trial court informed the [P]etitioner of the charges and that the [Petitioner] knowingly and voluntarily pleaded guilty." We agree with the State.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

Based on the Petitioner's argument at the post-conviction hearing, he specifically contends that Counsel was ineffective in failing to properly advise him of the culpability requirement for his convictions or the law concerning actual or constructive possession. In denying relief on this issue, the post-conviction court stated:

> Trial counsel has testified that he believes that [the Petitioner] did have some difficulty understanding some of the nuances of the law pertaining to possession and how it can be actual and how it can be constructive, and the Court understands that. Some law students sometimes have a hard time understanding all the ways that you can be in possession of something without actually having your hands on it.
>
> Trial counsel has testified that they spoke about it repeatedly, and that he talked with him at least 12 to 15 times. . . .
>
> Each time they talked about the charge, each charge, the range of punishment, the possible penalties he could get, the possibilities of getting consecutive sentencing, which would have been an important topic because with 18 prior convictions the defendant would certainly qualify under several of the statutory criteria for consecutive sentencing when there are multiple convictions, which is what this would've been.
>
> And so the Court will find that the evidence does not support the . . . petitioner's contention that counsel failed to properly advise him even though the Court does accept that some concepts–some legal concepts are difficult to understand. But it does appear that it was explained to him as thoroughly as could be done.

The record shows that the Petitioner provided the only testimony regarding his "misunderstanding" of the charges against him and the applicable law. Counsel testified that he met with the Petitioner over twelve times and each time he explained the law applicable to the Petitioner's case to ensure that the Petitioner understood it. The post-conviction court credited the testimony of counsel and determined that counsel was in no way deficient.

Nothing in the record preponderates against the determination of the post-conviction court. Accordingly, the Petitioner has failed to show deficient performance or prejudice arising therefrom. He is not entitled to relief on this issue.

**II. Guilty Plea.** As previously noted, the Petitioner apparently contends that he was coerced into entering his guilty pleas based on counsel's failure to properly advise him of the applicable law. The State counters that the Petitioner entered knowing and voluntary guilty pleas "[b]ased on counsel's testimony that he explained the charges and the plea agreement to the petitioner, as well as the [State and court's] colloquy at the plea hearing[.]" We agree with the State.

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

In regard to this issue, the post-conviction court determined that the Petitioner failed to present any evidence supporting his claim that he did not understand the nature and

consequences of entering his guilty pleas. After noting the Petitioner's extensive history in the criminal justice system, the post-conviction court stated:

> [T]he Court has reviewed the transcript of the plea procedure itself and it is abundantly clear that the attorney general clearly announced the agreement, clearly announced that [the Petitioner] was pleading guilty to possession with intent to sell or deliver. [The Petitioner] was present, he heard that, the evidence before this Court, and today the testimony, as well as the transcript, indicate that [the Petitioner] couldn't have helped but hear that, that he was pleading guilty to possession with intent, and his attorney entered a plea of guilty for him. And that . . . [the Petitioner] went through the entire procedure and answered the questions propounded by the Court to make sure that he understood what he was doing, and that he understood what rights he was giving up, and that he was pleading guilty because he was in fact guilty. And he answered those questions in the affirmative.
>
> So from the testimony of the witnesses and the transcript of the plea procedure itself, this Court cannot find that trial counsel was deficient in any way. That [the Petitioner] was given a lot of advice, sound advice, and that certainly there's no evidenced that he's prejudiced. In fact, all the evidence suggests that had the State not agreed to do a plea bargain, [the Petitioner] was quite possibly looking at a much worse result than he ended up with.

The record shows that the trial court followed the guidelines of Rule 11(b) of Tennessee Rules of Criminal Procedure and thoroughly questioned the Petitioner about the terms of the plea agreement and consequences of his guilty plea. In response, the Petitioner acknowledged that he understood and stated that his counsel had explained the plea agreement to him, that he was satisfied with counsel's representation, and that he was entering the plea freely, knowingly and voluntarily. Prior to his entering his plea, the prosecutor announced that the Petitioner would "enter a guilty plea in this case to count one, possession with intent to sell a schedule II controlled substance more than 26 grams," and the "recommended sentence would be eight years to serve at 30 percent." The court then asked the Petitioner if "the agreement that was announced by the attorney general . . . [was his] understanding of the agreement in [his] case," and the Petitioner agreed. The record

supports the post-conviction court's determination that the Petitioner's guilty pleas were knowingly and voluntarily entered.  Accordingly, the Petitioner is not entitled to relief.

## CONCLUSION

Upon review, we affirm the judgment of the post-conviction court.


_____
CAMILLE R. McMULLEN, JUDGE